

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS
## AUSTIN

GROVER SELLERS
ATTORNEY GENERAL

Honorable R. A. Barton
County Attorney
Calhoun County
Port Lavaca, Texas

Dear Sir:    Opinion No. O-6602
             Re: Whether cattle guards can
             lawfully be erected upon
             certain public roads in
             Calhoun County and related
             matters.

        Your request for opinion has been received and
carefully considered by this department. We quote from
your request as follows:

        "The Commissioners Court of Calhoun
County have requested your opinion as to its
legal jurisdiction, with reference to two
roadways, situate within the unincorporated
townsite of Port O'Connor, Calhoun County,
Texas, and respectfully submit as follows:

        "STATEMENT OF FACTS

        "1.  That on or about the 22nd day of
October, A. D. 1909, the owners in fee estate,
the Port O'Connor Townsite Co. had placed of
record in the deed records of Calhoun County
in Vol. 2 pages 1-2 a map or plat, the perti-
nent part of certificate of said company being
herein quoted as follows:

        "'KNOW ALL MEN BY THESE PRESENTS, that by
authority of a resolution of the Board of
Directors of the Port O'Connor Townsite Co. of
even date herewith, authorizing this instrument
and for THE PURPOSE OF PLACING OF RECORD THE

ATTACHED PLAT AND MAP FOR CONVENIENCE OF
DESCRIPTION IN CONVEYANCE AND SALES OF PROPERTY,
on the town tract of the City of Port O'Connor,
the Port O'Connor Townsite Co. hereby places of
record the enclosed map.'

"2. That on or about the 24th. day of
January, A. D. 1910 and as recorded in Vol. 2
page No. 3 of the deed records, appears a second
map or plat covering additional property, the
pertinent part of said Certificate being as
follows:

"'Know all men by these presents, that the
Port O'Connor Townsite Co. acting herein by its
President H. G. Hertel, thereunder duly authorized
by the Board of Directors of said Corporation,
having subdivided certain lands belonging to said
Corporation, which are shown on the map hereto
attached, into outlots adjoining the townsite
of Port O'Connor heretofore designated does hereby
acknowledge and declare that the map and plat of
such subdivision hereto attached to be a true and
correct map and plat of such subdivision and does
hereby DESIGNATE AND DEDICATE THE ROADS AND
STREETS THEREON SHOWN TO THE USE AND BENEFIT OF
THOSE PURCHASING LANDS IN SAID SUBDIVISION.'
  (Emphasized sections are those of the writer)

"3. That Port O'Connor is not and has never
been incorporated.

"4. That the two named plats were never
presented to the Commissioners Court for filing
approval and have never been approved.

"5. That the sections of the two plat
streets in dispute have never been accepted by
Calhoun County.

"6. That other sections under plat or
map number one have been worked to some extent
by Calhoun County.

"7. That no part of the mapped streets
under plat No. two has ever been accepted or
worked.

"8. That the only improvements of the two

Hon. R. A. Barton - Page 3

streets in dispute occurred on or about the time of the original dedication, by work done and performed by the Port O'Connor Townsite Co. at its own cost and expense.

"9. That there are no actual houses within the bounds of the property in question.

"10. That there are various landowners within the bounds of the property in dispute.

"11. That complaint is not being made by property owners within the confines of the disputed property.

"12. That Complaint is being made to the Court by other resident Citizens of the Townsite of Port O'Connor.

"13. That there having been no official or otherwise acceptance of the platted streets by Calhoun County, that there has been no designation as to CLASS, by Commissioners Court.

"14. That the general public have used to a considerable extent, one, and the second to some extent of that section of the two streets in dispute.

"15. That complaint is being made by certain citizens of Port O'Connor, as to the erection of cattle guards on the two streets in question.

"In order to present a slight picture of the townsite of Port O'Connor, it might be stated that the main section of the town is situate upon a slight elevated ridge, with Matagorda Bay to the east and northeast, with the Intercoastal Canal to the southeast and south, and with what is known as Boggy Bayou to the northwest. The two streets upon which cattle guards have been placed, extend towards the mouth of Boggy Bayou and to the marshes of said Bayou.

"During the year 1945, a citizen of Calhoun County, purchased from the successors of the Port O'Connor Townsite Co. a part of the lots and blocks

Hon. R. A. Barton - Page 4

shown in plats Nos. One & Two, and has built and erected a fence to the abutting roadways of the two streets, connecting the ends with two built and erected cattle guards in the middle, with wire gate along side of each and is using the inclosed part for stock and cattle raising purposes. The complaint extends, not to any defective or insufficient erection, but to their existence.

"QUESTIONS

"1. Would the two streets as mapped by the Port O'Connor Townsite Co. and used by the general public, be public roadways of Calhoun County?

"2. In the event the two streets are public roadways of Calhoun County, would the jurisdiction of the Commissioners Court attach thereto, without acceptance by official order, work, or without classification?

"3. Would the placing and maintenance of cattle guards on the two mapped streets constitute an obstruction of said roadways?"

We quote from 21 Texas Jurisprudence pp. 534-5-6-7-9, 540 and 546, as follows:

"¶ 7. Statutory Terms - 'Public roads' - 'Highway.' The statute relating to county roads refers to all public roads and highways not discontinued and established agreeably to law. This has been construed to mean a road established by the Commissioners' court. The expression 'public road' in other statutes is generally construed to include nonstatutory as well as statutory roads; . . .

". . .

"¶ 9. County Roads - Classification. Under statutory direction commissioners' courts classify roads as of the first, second or third class. The purpose of classification is in order that a minimum width may be prescribed according to class. The prescribed widths are: not less than forty nor more than one hundred feet for first and second class roads and not less than twenty feet for third-class roads, with causeways sixteen feet in width for first and second class roads and twelve feet for third-class roads.

"§ 14.  Statutory and Nonstatutory Roads. Another classification of highways points to their origin as being statutory or nonstatutory. Prior to any statutory procedure for the establishment of highways, dedication and prescription were the modes of acquisition known to the common law.  These modes have not been abolished by the statute that prescribes a procedure for the establishment of roads by county officials. . . .

"  . . .

"§ 15.  In General.  As already noticed, a right of public travel over land may be acquired without any establishment of a highway by proceedings under the statute.  Also, as noticed hereafter, official adoption or even recognition is not essential.  One nonstatutory mode of acquisition is by dedication.  Dedication may be by overt act of the owner signifying his intention, the dedication being accepted by public use.  Also, without any overt act on the owner's part, the public may in fact travel over his land in such circumstances that intent to dedicate it to the public use for highway purposes may be inferred.

"Another mode of acquisition is by prescriptive right vesting by virtue of long-continued use. Thus public use may be evidence of the acceptance of a dedication, or of the owner's intent to dedicate and the public's acceptance, or of a prescriptive right of use.

"  . . .

"§ 20.  Prescription. . . .

"Period of use. - Before adoption of the statute of limitations as prescribing the period of public use, twenty years was regarded as the minimum period.  The longest statutory term (ten years) is now accepted as the minimum period.  To make up the statutory time, the term of use under former owners may be tacked on to the time of use under the present owner."

8

Opinion No. O-4965 of this department holds that cattle guards are obstructions to public roads, regardless of whether such public roads are statutory roads established by the Commissioners' Court or whether same are non-statutory roads established by dedication or prescription. This opinion discusses fully statutory and non-statutory public roads and various cases dealing with road obstructions and a copy of same is enclosed herewith.

You state in paragraph 14 of your statement of facts that the general public has used to a considerable extent one of the streets and to some extent the other street. If the full facts disclose that the general public, by its use of the streets for many years and in excess of the statutory limitation period of ten years, has acquired by prescription the right to travel over one or both of said streets, then in such event such street or streets would be "a public road or roads" of the county. This, we think, disposes of your first question.

Your second question is rather general and we deem it unnecessary to attempt to answer same in view of our answers to your first and third questions.

In answer to your third question, it is our opinion that same should be answered in the affirmative, if the said streets are "public roads" as outlined in the answer to the first question. Article 784, Penal Code of Texas, makes the obstructing of a public road or street a criminal offense and prescribes a penalty therefor.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By

Wm. J. Fanning
Assistant

APPROVED MAY 24, 1945

ATTORNEY GENERAL OF TEXAS

WJF:BT



APPROVED
OPINION
COMMITTEE